The second case in which we'll hear oral argument this morning is number 2008-7129 Cushman v. DVA. I think they're talking over here. Mr. How do you pronounce it? Kalea or Salea? How do you prefer? It's Kalea. Ah, I got it wrong both ways. Mr. Kalea then. Good morning, your honor. Just want to confirm you have five minutes for rebuttal? Yes, your honor. Okay, well you can start whenever you're ready. May it please the court, Kevin Kalea on behalf of claimant appellate Philip Cushman. This case raises an important question of constitutional law, so I want to start there. Our constitutional claim is a claim under the Due Process Clause. The Due Process Clause, like much of the rest of the Bill of Rights, is about protecting citizens from arbitrary exercise of government power. This case provides a dramatic example. Mr. Kalea, speak up a little bit, please. Sure. This case provides a dramatic example of an arbitrary exercise of government power. Here, an unknown government employee, nearly 32 years ago now, altered Mr. Cushman's medical records in a way that I appreciate that, but let me get to the heart of what's troubling me, so maybe I'm just really missing something. Do you agree that there might be a difference, even if we recognize there might be some due process challenge that might be viable in the context of veterans' benefits? The difficulty I'm having in this case is that it arises based on a CUE claim. We're not talking about 1982, there was some arguable problem with the hearing he got, and then you discover that in 1985 and you file a claim. We're talking about this arising in the context of your making a CUE claim. And isn't that different because CUE, the requirements of CUE, clearly require as one of them that you demonstrate as a threshold matter that the result would have been different, had it not been for the improper conduct or whatever. And so, don't you think even if the due process issues do arise in the context of veterans' benefits, you wouldn't disagree, would you, that under CUE, you still have the requirement in the CUE context to show that the result would have been outcome to change the outcome? Our argument is that if the CUE standard would allow a decision to stand where a veteran never received a fair hearing because of fraud by the government, and he can prove that it's more likely than not that the outcome would have changed for the fraud, but he can't meet the CUE standard that it's undebatable or absolutely clear, maybe it's 80%, maybe it's 90%, a very high likelihood that the fraud changed the outcome of the case. If CUE prevents any remedy in that situation, it's unconstitutional. Due process requires that the veteran get at least one fair hearing where the incorrect facts aren't before the board. And here, the incorrect facts are very important to what the board decided because the document that was altered limits the present type of work that Mr. Cushman was incapable of performing without aggravating his disability. And that document stands alone in not listing sitting as among one of the activities that aggravated his injury. That leads directly to the 1982 board's conclusion that he was not precluded from sedentary employment. Sedentary, it's just a fancy word for sitting. And the record is filled with evidence that he couldn't sit without aggravating his injury. I might have thought you would answer Judge Prost by, in part I guess you did, but I would have thought you might have answered Judge Prost by saying that there are really two independent causes that your client is bringing. One of them is the CUE action, which is the formal action brought under the statute. But to the extent that there is an underlying constitutional question that stands independent of the statutory CUE remedy and that you want to keep those two ideas separate. That's exactly right, Your Honor. And if the court disagrees with us on the regulatory claims that we make, the issues of regulatory interpretation, the court can't avoid the constitutional question for the very reason that in my previous answer, because it would allow a situation where it's more likely than not that the fraud changed the outcome, but not quite undebatable. And why is it necessary for you to argue that it's more likely than not that it might have changed the outcome? And that is under CUE, I think Judge Prost raises a very important point, which is CUE is usually outcome determinative as our law has developed. We say it has to be outcome determinative. Would it not be enough for you to argue that the presence of a tainted document, I'm not going to say it was fraudulently procured. Nobody seems to know how it got into the record. The presence of a tainted document, I would have thought you might argue, is enough in that 1982, 80-82 sequence to have caused a constitutional violation of his property right to the alleged, or property right, alleged property right to the pension, and that therefore he never got a fair hearing. Why wouldn't that meet your constitutional due process standard? So we do argue that, and the reason that I talked about more likely than not is just to demonstrate how perverse the situation could be if CUE is used as a bar to a claim, because even if there was fraud and it's conceded by the government that there was fraud, even if it's, no, no, in a hypothetical situation. I think the government admits there was a document that was altered. Right, I'm not saying in this case that the government concedes there was fraud. The government does concede that the document was altered, but even in a situation, they argue that fraud is irrelevant. They say that even if there was conceded fraud, you still have to meet the undebatable and absolutely clear that it changed the outcome of the board's decision in 1982. So my hypothetical is that even if the fraud's conceded, and it's more likely than not, but not quite undebatable, you would lose. The government says you would have no remedy whatsoever for that fraud, because you couldn't quite meet the threshold of CUE to show that the fraud undebatably changed the outcome of the case. So are you suggesting that there's sort of under the CUE, I mean, backing away a moment, I know you suggested that maybe we should just say that the whole CUE stuff is unconstitutional. Short of doing that, or at least unconstitutional as applied in certain contexts, but short of doing that, are you suggesting that you file a CUE? I mean, the problem you have with CUE, it's twofold, it seems to me. One is that you've got to pass a threshold that it would have been outcome determinative, and the other one is you back up against our standard of review, which is extraordinarily limited or nonexistent, really, with respect to facts, whereas you don't encounter that in the due process thing. I'm just wondering what you're really advocating, though. In the CUE context, there's a carve-out of due process allegations that sort of don't have to meet any of those other requirements that necessarily fall in the CUE. In other words, I'd be having less problems if you would just come in in 1987, or whenever it is that you found out that there was some alleged fraud or alteration or whatever it was, and centered a constitutional claim on that. What's giving me problems is that all of this comes up, arises in the context of a CUE claim, years, I think, after you discovered the problem. So that's incorrect, Your Honor. From the very moment that he discovered proof that the document had been altered, he's been raising the constitutional claim. Every set of papers that he filed or that any representative filed on his behalf says due process. But to pick up on, I think, what Mr. Khalil did pick up on, which is processing, nevertheless, the case is before us in the setting of a CUE claim. And as she pointed out, there's an exacting standard and very limited factual review for us. In fact, none. And we have here a finding by the board and then affirmed by the Court of Veterans' Appeals that this was not outcome determinative. And there are other findings with respect to the alteration. We can't look at those findings. What do we do? Is that where you say, I think I've correctly stated the law. Correct me if I haven't. But, I mean, is that where you say we run into this issue of the constitutionality of the CUE scheme or the CUE scheme? So if there's a constitutional claim, this court can consider the facts and indeed should conduct a careful review of the record. That's both the statute, the jurisdictional statute, 7292, and it's the In re Bailey case where the court said we've conducted a careful review of the record and evaluated the facts and the law to rule on the constitutional claim. So as to the constitutional claims, this court's not bound by any factual determination that the veterans court or the board might have made. Is your constitutional claim tied to the CUE, the C-U-E claim? That is, Judge Schall is asking, and I think Judge Post was asking the same question, in order to reach a constitutional claim, do we have to say anything at all about the C-U-E claim other than you lose under, if we say you lose under C-U-E, do you therefore lose under the constitutional claim? No. And the only reason that we're bringing a C-U-E claim is because it's the only path to a remedy other than the constitutional violation. The period of time we're talking about here is from May of 1977 until 1994. And the reason we have to bring a C-U-E claim is because it's the only type of claim that can give retroactive benefit back to what the decision would have been in 1982 if the correct facts had been before the board. Your constitutional claim would not give you that remedy? So I said the constitutional claim also would give us that remedy. We could only bring the constitutional claim after we discovered the facts of the alteration. And Mr. Cushman and all of his representatives consistently brought that claim through the path. It's just taken a long time to get to this court today because of the procedural history in this case and the failure to consider the merits of claims. So the failure arises, even if there is a due process problem here. It was at 80 or 82, whatever. But you did get a second hearing. You got the second hearing in the context of this appeal two years ago or a year ago, whatever. Even assuming there was a due process problem with the 80-82 stuff, why isn't that sufficiently remedied given that you did have a hearing years later? So the procedural history that led to the hearing in this court in 2003 is that Mr. Cushman raised both the due process and the CUE claim in the board, and the board failed to rule on those issues. Then he went to the Veterans Court, and the Veterans Court said, we don't have jurisdiction because the board failed to rule on the issue. Then he appealed to this court, and the court affirmed the Veterans Court's decision that they did not have jurisdiction. At oral argument, the court questioned, how can Mr. Cushman get a remedy to end this 31-year-old case to get a hearing on the merits? And both the court and counsel for the government suggested that the appropriate path was to go back to the board, present his CUE claim, and then he could pursue that path all the way through the courts. That's exactly what Mr. Cushman did. As soon as that decision came out, he went back to the board. And you got a full and fair hearing in the context of the CUE claim, correct? Why isn't that sufficient to sort of remedy what happened in 8082, given that you had a further opportunity on these questions? It's not sufficient because it's constrained by the CUE standard. Because even if the fraud is conceded, and it's more likely than not that the fraud changed the outcome, the board would still rule against him on the CUE claim, and the board didn't rule on the Constitution. Why would the board still rule against him? Because it's not outcome determinative? Right. He has to show that it's undebatable and absolutely clear that it changed the outcome, that the fraud changed the outcome of the 1982 board hearing. It's clear he can't show that based on the altered document. So your CUE claim probably is fatally flawed. Let's concede that just for the moment. Let's now look at your constitutional claim. What's troubling me about your constitutional claim is, does this document really raise the altered document? Does the presence of the altered document back in the 8082 sequence, and I throw those two events together because they basically are the same event, is the language of the altered document about sedentary, maybe yes, maybe no, is that enough to have tainted the decision of the RO and the board in the 8082 sequence to rise to the level of a due process denial? I assume what you're really asking for now is simply a rehearing. Is that right? Right. You're not asking... Not a rehearing, but a fair hearing. A fair hearing. I'm sorry. I misspoke. A fair hearing. That's your claim. You're not asking for us to order payment of any kind or even order remand to the Veterans Court or the board for payment. What you're asking us for is to order a fair hearing without the tainted document. Does the language of that document warrant the presence of that document in the original hearings warrant that relatively extreme measure of invoking a constitutional violation? Yes, it does, because that record stands alone in failing to list sitting as among the conditions that aggravated his injury, and that failure leads directly to the board's conclusion that he was not precluded from sedentary employment. There was other evidence that he could sit, was there not? I mean, there was his statement. There were other things the government has pointed to in its brief that led to the similar support for the sedentary issue, right? I'm happy you asked that. That's exactly where I was going. The key document that the government cites in his brief is in the appendix at A93. It's cited on page three of the government's brief. The only other citations they give are to the board and to the Veterans Court's decisions. And if you look at it, right in the middle of the page, it says, sitting in one position will lead to severe low back and leg pain. Moreover, the government argues that this document somehow shows his back pain had recently eased, but if you read the document, no reasonable construction of the document could lead to that. It says he's able to bend a little, but it causes pain. He has no range of motion. He conducted tests for his flexibility, but even though he was only asked to bend a little, it hurt so much that the doctor made him stop demonstrating. But didn't the government also rely on, I guess there's some statement by him about how he assumes things are going to perk up and he's going to be able to do it? I mean, this is that document. The statement by him is that he can't do his current job because it requires bending, stooping, and lifting. That's the part that matches the altered document, but it ignores the part immediately below that talks about how he can't sit either. And it says that he is attending vocational rehabilitation and he has a goal of finding some type of work that he can do. The board shouldn't be able to hold against him that he wanted to find some type of work that he could do. The fact of the matter is that he just was unable to find that type of work. And there's no medical evidence in the record anywhere that says what type of work he could do. All the board found was that he wasn't precluded from sedentary employment, but the record shows that sitting aggravated his injury to the extent that it caused him severe pain and it shows up in the medical documents. So let me just go back to Judge Plager's last question, which is what you're seeking. So you're not seeking sort of a do-over of the CUE thing, applying different standards. You're seeking a do-over of the 8082 hearing, right? One fair hearing that considers the evidence and not the fraudulently altered medical record. And we do think that this court has the power to remand with instructions to end the 32 years of injustice that's gone on here. But we are seeking a fair hearing. Are those two different things? They are two different things. In other words, your version of ending the 32 years would mean we would order payment. Remand with instructions, but alternatively, for payment. But alternatively, you would be prepared to say what you want under the due process clause is a fair hearing. Right. Before the RO. Before the RO. Reconstructing the circumstances in 1980-82, but without the altered document. Exactly. Okay. How much money, approximately, how much money is at stake here? Do you have any? I don't know. But it's the difference between a 60% rating and a 100% rating for the years 1977 to 1994. Let's see. You went over your time. You had 15 minutes, plus you've had four minutes of your time. But we'll restore your rebuttal. Thank you, Your Honor. So you'll have your full five minutes of rebuttal. And we'll hear from the government. Mr. Hockey, we'll give you the same amount of time, which, let's see, he gets four minutes. So we'll give you, if you need it, you have, if my counting is right here, 24 minutes, if you need it. That way it will be completely equal. If you can finish sooner, fine, but you have that if you need it. That way everyone will have the same amount of time, I think. If you finish sooner, you win. Otherwise, you don't. May it please the Court. I think what we have to remember is we're talking, when we talk about due process, we're talking about the process generally and not in an individual case. And I think the Supreme Court's clear about that. I think the question that was lost in what I've just heard. Whoa, whoa, whoa, whoa, whoa, whoa. Hold it. Hold it. The cases that talk about it generally are talking about the question of whether the statutory provisions for giving someone an opportunity to be heard and so on meet basic requirements of the due process clause. And that's what we're discussing. As a general proposition. Is it your position, Mr. Hawkins, that if the Congress creates a statutory system of hearing and review for determining whether someone is entitled to a particular benefit, and the Supreme Court would say that meets constitutional due process standards, it would also meet constitutional due process standards if that particular hearing was held based on fraudulently prepared evidence by the government before decision makers who were deliberately paid off to hold against the particular applicant and that there would be no remedy under a due process claim for that kind of a totally tainted hearing? You're not saying that due process just requires the statutory procedures regardless of how they're conducted, are you? Well, there are different... You've identified about three or four different examples of... I mean, even Henry VIII wouldn't have said that. He may have said that, actually. He tried, but I don't know that he succeeded. There weren't a lot of people around to question him back then, and those that did lost their heads. It's too bad we've given that up, but we have, so let's proceed. What is the remedy when a perfectly proper statutory or constitutional procedure is fatally tainted? Well, if you have a finding of a... Like, for example, with a biased judge. Courts have determined that, in this case, the hearing was provided, but the judge was biased, and they would say that someone's... I believe cases have said that people's due process have been deprived. My point here, and I want to talk about... That was the only point I wanted to make. That's great. ...was that due process requires an untainted process, not just a process. And in this case, what the court needs to look at is the process that was provided by the Veterans Department. No, we need to look at the process that occurred at the Veterans Department. Well, this... The process that occurred was the one that... The process that was provided. What's the process that's available to the claimant? What was the process that was available to Mr. Cushman when he raised his claim? Could he have challenged this? He seeks here today, as the counsel just stated, an opportunity for a de novo review without this document that he contends was tainted. And, of course, as the court noted earlier, we maintain there's no evidence... There's evidence that there were two different versions of the same document. He's entitled to a constitutionally due process. He has a property right. You would agree with that. I would say thus far the Supreme Court has not extended... We all know thus far the Supreme Court has not extended it. Nor, as you say in your brief, has this court ever decided it, although we may be about to. You may very well be. That issue aside for the moment... Does the government have a position on that issue? Yes. The Supreme Court hasn't extended it, so our position is that this court shouldn't either. But I don't think we need to reach that issue. I think that even if you... We do need to reach that issue. Now, let me ask you this. A number of court of appeals have reached that issue, haven't they? They have. And a number of circuit judges have concluded, quite a number, that there is a property right under these kinds of cases. Under those kinds of cases that they determined where the agency does not retain discretion to deny benefits once criteria have been established, courts of appeals have said that they would consider at least in different levels a property interest existing with respect to those applicants. The problem, just to answer this question, the problem, I think, with that reasoning is it skips over the entire... I mean, it sort of puts the cart before the horse. We're assuming that all requirements to establish benefits are the same. When you look at what the Supreme Court did in the 1970s and 80s with respect to these due process claims, they were really focusing on this concept of the legitimacy of the expectation. Did the individual have a legitimate expectation in thinking that they had the property interest? And when you think about that for a second, you can't equate a situation in which someone only has to establish that they were a veteran to receive benefits, as opposed to someone who has to actually establish all of the requirements of nexus, in-service, incident, and present disability. Isn't that what Mr. Cushman had to require? He was required to establish service connection. And? And he did. And the injury? With respect to certain benefits, he got a 60% rating. He did not establish that he was entitled to a 100% rating. So in that sense, he's still in the same position as any other applicant in that he is reaching for something that he does not have. Hold it. He didn't establish it. He did ask for it. He asked for a 100% rating. But he didn't establish it because of the tainted process. That is what the contention is. And you're saying that because he didn't establish it, he didn't have an expectation of it? Help me understand your position. I realize. I read the government's brief, and I've been very puzzled. So help me. I would like to explain our position. OK. Our position is that when the court looks at the process provided under the Matthews 2, let's just assume for a second that the court's going to say, yes, there's due process. What I said earlier about the court doesn't need to reach the issue is precisely that the court could find, well, we don't need to reach this difficult question of whether we're going to change our due process in VA POs because even if we did, process was provided in this case. And that's what all courts do. This is courts done that to try to avoid those complex, difficult questions of constitutional law. So let's apply, let's look at the second Matthews prong. What was the process that was provided? And this is where we, I think, diverge, although I'm not so sure after hearing this morning, from the appellant in that when we think of the process, we think of a process that starts and ends. And the process that the court has to consider in this case has to include that process that took place in the 1970s and 80s that led to today. So does a claimant who comes in and says that I think there was a document that shouldn't be in my file, and I'd like to have that document not considered, and I'd like to have a de novo, which is what we were hearing this morning and in the briefs, a de novo review. Is there procedures in existence within the VA system that would allow that to happen? And the answer is most definitely yes. Regulations exist which allow an individual to obtain his complete medical records. And in fact, in this case, such regulations were taken advantage of when Mr. Cushman had his complete medical records in the late 1970s prior to either the 1980 or 82 board decision. But you're arguing, if I understand it, that the fact of the 80-82 hearings gave him the process that he was due. The process is not limited to the fact that a hearing existed, although if you were to look at the Supreme Court's examination of where Congress has decided to create a process and decided how much additional due process, if any, is needed. As we understand it, the Supreme Court has said that they should be very careful about stepping on the toes of Congress, but that they should ensure themselves, the reviewing court, that minimal ideas of process, the notice, and the opportunity to be heard are provided within the procedures that are provided by statute. Mr. Hockey, you're confusing me, and I admit I'm easily confused. You keep talking about the adequacy of the statutory hearing process and the fact that he got a hearing in 80 and 82. He did. But that's not the issue. The issue is not whether that hearing process mandated by Congress is, in general terms, adequate. It clearly is. The only question is, when he went through that hearing process, did he get a fair hearing applied to his case? Now, he's raising the argument that those hearings were not fair. The fact that they existed can be used against him. He's maintaining that they weren't fair because, he contends, the decision-maker, without support, I might add, because the record doesn't support it, the decision-maker relied upon a document. The VA decision-maker, now in contrast to the Social Security individual, AJ, relied upon a document that shouldn't have been there. What we're suggesting is that he could have had a remedy. There was a remedy built into the process, the VA procedures, that would have addressed that had he taken advantage of it. Now, when we look closely at the record, we find out that in 1978, the Social Security AJ references this document. There's some mention of that made in Mr. Cushman's brief about, well, the Social Security seems to have changed. That was 1978. A year later, Mr. Cushman obtained his entire claims file, which presumably included the document, because obviously the Social Security judge had it the year before. All of this took place, and I will add one thing. There is one citation that the court might be interested in, and it's to the record, but unfortunately did not make it into the appendix, which is appendix page 503, which is the transmittal letter that the VA provided with a copy of his entire claims file. All of this took place prior to his oral testimony before the board in 1979 and his subsequent written testimony to the board in 1979. Had he been concerned about that document at that time, he could have raised it as an issue. He did not. Your case is resting on the fact that there's no due process violation because it was up to him that we're supposed to infer that he knew and appreciated this altered document was going to be before the board, and he had, therefore, the responsibility to make sure that it wasn't in his file. Is that what you're saying? What the court looks at when they're trying to apply the Matthews criteria are procedures in place that would have addressed this issue. We're maintaining, yes, the procedures in place. We cannot, in every situation, guarantee that an individual will take advantage of every procedure. And I must say that, and again, the premise underlying your question, Your Honor, with all due respect, is this assumption that the document is tainted, that it was fraudulently put in the record. That's never been established in this case. No, no, no. There's a difference between the tainted document, I purposely used that term, and fraudulently procured. We don't know how that document got altered. Everybody agrees to that, but it's clear that it was an altered document. It was different from another version. We don't know if the same individual who wrote the first phrase came back later and added the second phrase. But I'm so confused because years later it appears, I don't remember where in the record, but when they discovered this, whatever it was, this alleged alteration or whatever, the Veterans Administration itself took this so-called alternate document and took it out of the record. They did, yeah. In other words, there was some seeming recognition that this was improperly in the record. In other words, if they were even to get the remedy that they're requesting, not that they will, but if they did, I would assume the record that we're talking about, which is the VA's record, no longer contains that document because there was some concession that it shouldn't have been there in the first instance. Am I missing something? I believe that the only thing, not that you're missing anything, Your Honor, but the only thing that would trouble me with respect to the characterization is simply that the removal of the document evidences some sort of concession by the VA about the document. The record now no longer has the document. It was removed by the VA. So what stands now is the allegedly unaltered document and not the allegedly altered document as far as what the appropriate record of his medical documentation is. Am I right? Yes, as well as all the other evidence that led the Board and Veterans Court to not find Q, including, I think as Your Honor indicated, the ironically same-dated letter from Mr. Cushman to the VA of November 16, Appendix 71, in which he also lists his symptoms in a pretty much almost identical fashion as the so-called altered document. But my point is that the procedures that led to the removal of the document after the Board decisions didn't change. The document could have been removed prior to the Board decisions, and we believe that when you look at the Matthews test, the question is, were the procedures properly in place to allow a fair hearing? And because someone, of whatever reason, they don't raise an issue, doesn't mean automatically that there's a due process violation when they could have raised the issue. They just didn't. Now, I recognize that does put somewhat of a burden on an individual when they're raising a due process issue, but I believe nobody can sit on their rights and say, well, I didn't take advantage of an opportunity I had then, so I want to come back later and try to rectify it. Now, there is even more process provided by Congress in the form of the clear and unmistakable error statutes and regulations, which allow now collateral attacks on final decisions. But those have to be outcome – you have to show – Absolutely, there are requirements. – outcome determinative, which is something other than one would have to show if there was some due process problem. But that doesn't mean that the original procedures that predated the final decision didn't allow the challenge at that time. So, and frankly, as we point out in our briefs, that's why the Q statute has to be considered within the overall scheme of the system. Well, you keep seeing – you keep suggesting – Judge Prost is having the same problem I am with that argument. You're suggesting he either knew or should have known that somehow into his record back in 1980, 82, there was slipped and altered documents. Let me give you a hypothetical case. Let's assume a Mr. Smith veteran applies for – for benefits for injury of some kind, right? And the record is built to show that, yes, he was in service. He has affidavits from other soldiers about how he was injured and so on. And there's some medical evidence. And the question is not at all clear the extent of his total injuries, but that's all before the RO and ultimately on appeal before the board. It later turns out – and there happens to be a document in his record that says, from the VA's medical exam, saying, our analysis of Mr. Smith is that he's a malcontent and a fraud and doesn't really have any of these injuries. And all that's in the file and the RO denies him any pension and that's affirmed by the board. Later on, it turns out that that last document was about an entirely different Mr. Smith, had been misfiled into his record. At that point, is it the government's position that there has been – that there's no due process violation of his rights to a fair hearing when he has and can show that the record before the RO was clearly improperly compiled by the government? The answer to that question, Your Honor, is, according to the second Matthews test, where the procedures exist to rectify that situation, then there doesn't need to be any change or additional process protection provided. The answer to that question, Your Honor, is yes. The Q statute provides an opportunity. But it clearly is not clear that it would be outcome determinative. Well, no. I mean, I think in your situation, it depends. Because we don't know. We don't know what the RO's basis for denying it. It may be that the rest of the record persuaded him there really wasn't any sufficient injury to warrant that. We don't know. Just as we don't know in this case what the AD decision was – it's not like the AJ in the Ninth Circuit case where the AJ clearly referred to the wrong – to that tainted document. We don't know what they did, do we? We do, actually. We know all of the documents that they referenced, which there was, as the record reveals, in both the AD and 82 Board decisions, a series of records that they referenced in support of their decision, none of which included the particular document in question, but included other documents and statements which support their decision that he was not – that he was still capable of some meaningful employment. But the government doesn't deny that the altered document was before the RO. No. Everything indicates that the altered document was in the record before the 1988 Board of Decisions. The thing that disturbs me about that – and again, we have to ignore for a moment what the standard of review is here and whether we're looking at the due process – but it seems that the Court of Veterans Claims in the current case relied heavily, and everyone is talking a lot about how it's not clear to us. There's no indication that they relied on this altered document. That seems very strange to me. In all of the cases we have where district courts don't end up saying anything in an opinion about a certain piece of evidence, our view of that is always that we absolutely assumed that they reviewed and considered and relied on to the extent possible that evidence. And in this case, it seems we're taking an entirely different tact. Your position is predicated on they didn't say anything about it, so they clearly didn't rely on it. Well, I think that when we read the 2005 Board Decision and Review, they are very careful about saying, A, as you indicate, that there's no specific reference to the document in question, but moreover and more significantly, I think, B, the other evidence of record, including Mr. Cushman's multiple statements in this record, and the unaltered note itself, which says, please no longer perform the present type of work, leads to the conclusion that he was not entitled to the 100% TDIU award. Well, it seems to me, I'm reading it differently. For instance, on page A20, it says, most importantly, this is the CABC now discussing the board's conclusions, most importantly, the board noted, quote, there is no indication that the board in 1982 relied specifically on the findings of the claimed altered 1976 report. Seems to me there was heavy reliance on the fact that, but having said that, let's move then to the question that you raised, which is because there was plenty of other evidence. Starting with the premise that when this case was sent back at this early stage, my recollection is that the instructions were to really look at the medical evidence, that it was the medical stuff that was critical here. And I guess I'm not seeing it because I'm focusing on the very specific conclusion here, which turned on whether or not he could perform sedentary employment. So that's what I'm looking at. And except for this so-called allegedly altered note, which seems to me very clearly to go to the question of whether or not sitting was within the range of what he can do, I'm not seeing what other medical evidence there was in the record to demonstrate that he was able to sit. Well, right, is that not the issue? I mean, the issue rose or fell. The final conclusion, the board concluded that disability is shown, to be of such severity as to effectively preclude all forms of substantially gainful employment, namely sedentary employment. So don't you read the board has rested on the fact that, well, he may not be able to lift or carry, but he can sit, right? I think when we look back at the record, which we did before oral argument in very close detail, and I know the court did as well, you're struck by the impression that Mr. Cushman's claims have somewhat changed over time. During the late 1970s, Mr. Cushman was recovering from a back injury, but at the same time maintained through several communications with the VA that he had in no way, and I commend him for this, in no way was going to be dependent on the system for the rest of his life. He was going to go out and get some other job that didn't involve the heavy lifting of the floor contractor. So he went out and he pursued this small electronic repair idea, obtained VA vocational assistance in that regard by attending school in 77 and 78, and indeed did manage to do some repair work. So when Mr. Cushman was approaching the VA in 77 and 78, and you can look in the record with respect to some of the records, what he's arguing is I want specific 100% TDIU awards for specific periods of time at various times to reflect the fact that at that particular time, whether it be because that was right after my surgery, or with respect to the 1977-78 period of time, was because I was actually attending vocational training. And I was unable to get a job because I was trying to learn the skills of a job. So what the regional office and the board is confronted with is a situation in which the claimant is saying, not that he can't work at all, in part, during the 77-78 time period, but that he's unemployed. And this was a point raised in the 82 board decision that said, the question isn't whether you're unemployed, it's whether you can't work. And he was clearly attempting a comeback, if you will, in another profession. And so there cannot be any dispute that at that time, Mr. Cushman had a positive view of the future, he was going forward, he was going to try to get a job, and that's all inconsistent with a TDIU award of 100%. Now subsequent to that, his back deteriorated more. And in the 90s, he was granted a 100% disability TDIU rating. It was after that that we start to see a desire to go back. We have the attempt in the early 90s and early 2000s to get Q in the early decisions, procedural issues affected those. But what we're suggesting is that's not, as we all know, what a Q board, or even the board at the time, is required to look at. They're supposed to look at what they're presented with at the time. And that was an individual who was trying to get back to work. I guess I'm a little confused. Do you disagree? I'm reading the board decision. We believe this evidence, and the evidence was it appears that disability was of such severity as to preclude him from performing his duty as the manager of the floor-covering company. So I thought the focus really on the board was this floor company thing and not necessarily that he was earning, what, $100 a month by doing it. However, the disability is not shown to be of such severity as to effectively preclude all forms, blah, blah, blah, because we believe the evidence fails to show the presence of a symptomology which would preclude sedentary employment. So all of this rests on medical evidence showing that he can perform or not perform precluding sedentary employment. I'm reading you what they said. I wouldn't agree that it's resting wholly on medical evidence. And in fact, although obviously those statements precluded this court's decision in general, the board has always considered lay testimony where it's applicable. And in certainly a situation in which the lay testimony is I only missed three or four days of work per month during my vocational rehabilitation exercise, that is evidence that would support a finding of employability. But do you agree that the import of this so-called alteration between what it said before and what it said after, the import of that was to suggest that he can do sedentary employment? When you compare and contrast the so-called altered document with Appendix 71, which is Mr. Cushman's letter of the same date, which one might speculate led to the alteration, they're identical. Mr. Cushman's basically identifying what he can't do with respect to his then present type of employment. He can't sit for prolonged periods of time. He doesn't say he can't sit. He said he can't sit for prolonged periods of time, which would rule out things like driving a truck across country. But it doesn't mean that I can't have a sedentary job repairing electronics where I stand up and go like this and twist around every once in a while and I sit back down. And that's the focus. When you combine that with the evidence that he was actually pursuing that potential occupation, you're left with the undisputed, I think, position that there was more than substantial evidence in this record to support the board's finding, in the 2005 board's finding, that despite the presence of this other document, there was plenty of evidence for the 1982 board to find. Let me ask you one question. We have some interesting and difficult constitutional issues floating around here in the context of the Kew claim. We have Mr. Cushman's situation. What is the government's aversion to a remand to the RO for just considering this thing on a record that would not include the revised document? We don't believe that there's really a legal basis to do so. The procedures existed. The procedures would be considering the Kew claim, have the RO consider the Kew claim in the context of a non-altered document. Well, that would be a violation of the Kew statute. I mean, the whole point of Kew is... We can't get there by Kew. It's very difficult to get there by Kew. I mean, frankly, if you took the document out of the record and sent it back and said, please review all these documents up to 1972, but ignore everything else up to 76, you know, everyone's going to know it's while we're reviewing a Kew claim. I mean, but the point, the legal response is that the process that existed at the time allowed for this. There wasn't a tainted judge situation. I want to ask Ants one more question, Judge Plager, before I get off. I just want to point out, I want to point out 38 CFR 20.904, which is a regulation that the VA has where there's a contention of a denial of due process for tainted judges, for example, where someone can go back and get a de novo hearing under that regulation. Let me ask you, let me ask, picking up on Judge Schall's last question to you. There's a problem dealing with this whole thing under Kew. No question about that. And the government's probably correct that there's not a good Kew claim for all the reasons we've been developing. On the other hand, the constitutional issues are difficult and there's a lot of problems there. But I take it that the government would not be willing, out of its own largesse at this point, to give Mr. Cushman a new hearing that would be a hearing on his situation as it stood in 1980, 82, but without the altered document. Is that asking that the government is not willing to do that to get this case back to where it needs to be? Is the government? First of all, well, my answer is this, Your Honor, message received. We need more than message received to dispose of this case. I know. I can't give you an answer right now because, of course, that would involve authorizations above my pay grade, if you will. But I will certainly take that into consideration and not expect, if the court wanted to defer issuing a decision for a couple of days or weeks, we might be able to determine whether that is a procedure that would be available and we could let the court know. Thank you. All right, Mr. Kalia, I think five minutes will be enough, even though Mr. Hockey ended up going over the 24 minutes. He had a lot of questions, and I think five minutes will be enough for you. Five minutes is enough, Your Honor. So I want to make a few points in response. First, I want to point out that the 80 decision, which is cross-referenced in the 1982 decision, absolutely does refer to the progress note that was the altered document. The quote from appendix at 170, which is the 1980 decision, is to outpatient clinic records in February, March, July, October, and November 1976. And if you compare that to the document, which is at 59 through 61 in its various versions, you'll see that for each one of those dates, there's an entry on the doctor's progress notes for the outpatient clinic, including the altered entry, which appears right after the November 1976 entry. So it was referenced by the court. The holding by the board is that it wasn't specifically relied on, by which I take it to mean, unlike the Social Security Administration, ALJ, they didn't directly quote the altered language from the altered document, which the ALJ did. Next, I want to point out that there's been a lot of talk that there's not findings that a VA employee altered this document. There's not findings in this case about that. But in the Social Security Administration case, which considered the very same record, they made a finding by a preponderance of the evidence that a VA employee altered the claimant's medical records. They made a finding that the VA employee did so knowingly. And they made a finding of similar fault, not quite fraud, but similar fault, saying that the Social Security Administration's decision could be reopened. And he was awarded full retroactive benefits for his Social Security claim, which is basically the same record that was before the Veterans Administration. Who made those findings? That's the Social Security. That's not the Ninth Circuit opinion. Not the Ninth Circuit opinion. The Social Security Appeals Council opinion. And it's in the record at A353. OK. The Ninth Circuit opinion simply says, especially in light of a fraudulently altered note. Right. Which they based, I take it, on the Social Security findings. No. The Social Security findings are after the Ninth Circuit opinion. So the Ninth Circuit calls it a fraudulently altered note, sends it back to Social Security, and they make these findings. That's the decision of the Appeals Council. Right. Got you. OK. Then I also want to, there was a lot of mention of Appendix A71. So I'd like the court to take a look at that document, which is among the many documents that lists sitting as among the things he couldn't do. It says, lifting, bending, sitting, stooping, and driving that is required in his job caused him to give up his job as a manager at the flooring company. And there's many other references that are cited in our brief that have this reference to he can't sit for prolonged periods of time, which is what is required by sedentary employment. Exactly what the 1982 board found that he could not do. And it also came up during argument that the document was ordered destroyed by the CEO of the Portland Regional Office when it was discovered that the altered document existed. There's no reason whatsoever to destroy the altered document unless there's a finding that something's wrong with that document, that it shouldn't be there, that it was inappropriate for that document to be in the record. If there are no other questions, we'll submit. Thank you, Mr. Galea. And thank you, Mr. Hockey. The case is submitted.